E-FILED
Thursday, 13 March, 2008 03:58:31 PM
Clerk, U.S. District Court, ILCD

1          UNITED STATES DISTRICT COURT
           CENTRAL DISTRICT OF ILLINOIS
2

3  UNITED STATES OF AMERICA,   ) Docket No. 07-cr-10037
                               )
4       Plaintiff,             )
   vs.                         ) Peoria, Illinois
5                              ) August 24, 2007
   WILLIE JAMES WILLIAMS,JR., )
6                              )
        Defendant.             )
7  _____)

8

9               RECORD OF PROCEEDINGS
                  SENTENCING HEARING
10     BEFORE THE HONORABLE JOE BILLY MCDADE
           UNITED STATES DISTRICT JUDGE

11               THE APPEARANCES

12             BRADLEY MURPHY, ESQ.
              Assistant U.S. Attorney
13       One Technology Plaza, Suite 400
              211 Fulton Street
14            Peoria, IL  61602
           On behalf of the Plaintiff
15

16
              LUKE P. TAYLOR, ESQ.
17             8 S. Fourth Street
               Pekin, IL  61554
18         On behalf of the Defendant

19

20            Nancy Mersot, CSR, RPR
         United States District Court Reporter
21            100 N.E. Monroe Street
               Peoria, IL  61602
22

23
   Proceedings recorded by mechanical stenography,
24 transcript produced by computer-aided transcription.

25

1          (Proceedings were held in open court.)

2          THE CLERK:  All right.  Call the case of the

3 United States of America v. Willie James Williams,

4 Jr., criminal case 07-10037.

5          Will counsel please enter their appearances.

6          MR. MURPHY:  Brad Murphy for the United

7 States.  Good afternoon, Judge.

8          MR. TAYLOR:  Luke Taylor on behalf of the

9 defendant Willie Williams, Jr., who is present in

10 court.

11          THE COURT:  The record will reflect the

12 presence of the defendant who is in custody.

13          Back on April 4th of this year, the

14 defendant entered a blind plea to the indictment and

15 the charge of possession of crack cocaine with

16 intent to distribute.  The matter is before the

17 court today for sentencing.

18          The Court has the Presentence Investigation

19 Report.  Copies of which were furnished both sides

20 for comment which is reflected in the addendum to

21 the report and the first -- both addendums.  And the

22 addendums indicate at that time Government has no

23 objections to the report.

24          Is that still the case, Mr. Murphy?

25          MR. MURPHY:  It is, Your Honor.

```
1           THE COURT:  Mr. Taylor, have you had an
2   opportunity to review and discuss with your client
3   the Presentence Investigation Report?
4           MR. TAYLOR:  Yes, I have, Your Honor.
5           THE COURT:  The second addendum indicating
6   that the defendant has one objection to the report.
7           Is that the only objection, if so, is it
8   reasonably and fairly summarized in the addendum?
9           MR. TAYLOR:  The answer to that is yes to
10  both questions, Judge.
11          THE COURT:  Mr. Williams, have you had a
12  chance to read the Presentence Report and discuss it
13  with your lawyer?
14          THE DEFENDANT:  Yes, sir.
15          THE COURT:  Are you aware that he objected
16  to the report in one respect which is summarized in
17  the addendum to the report?
18          THE DEFENDANT:  Yes, sir.
19          THE COURT:  Is that the only objection you
20  have to the report?
21          THE DEFENDANT:  Yes, sir.
22          THE COURT:  All right.  The Presentence
23  Report is hereby placed in the record under seal.
24  On appeal counsel shall have access to the sealed
25  report but not the recommendation section.  There
```

1  being an objection to the report, I must first

2  determine that objection before I can ascertain the

3  defendant's advisory guideline range.

4        Looking at the addendum, number two, which

5  summarized the defendant's objection, it appears

6  that he is objecting to criminal history points set

7  out in paragraphs 26 and paragraphs 28 through 34

8  which relate to convictions for -- related to

9  traffic -- to driving on suspended license, revoked

10 license and stuff like that.

11       Did you wish to present any evidence or to

12 argue the point, Mr. Taylor?

13       MR. TAYLOR:  Briefly, Judge, yes, please.

14       THE COURT:  All right.  Please use the

15 lectern.

16       MR. TAYLOR:  Yes, Your Honor.

17       May I?

18       THE COURT:  Yes, sir.

19       MR. TAYLOR:  Judge, I have no precedent or

20 case law essentially to present to the court on this

21 issue.  This is an issue that I discussed in depth

22 with my client and I presented on his behalf.  Your

23 Honor, what I can suggest --

24       THE COURT:  Was it against your better

25 judgment?

1        MR. TAYLOR:  Your Honor, not necessarily

2  against my better judgment, Your Honor, I mean, for

3  instance, one of the concerns I had with bringing

4  this objection is the fact that my client is

5  expecting and would like the Court to consider him

6  as eligible for the safety valve.

7        THE COURT:  I know, but what I'm referring

8  to, Mr. Taylor, is that it's clearly stated in

9  Sentencing Guidelines Section 4A1.2 that a traffic

10  offense, such as driving with license suspended or

11  revoked, is counted if a defendant is sentenced to

12  at least one year probation or more than 30 days

13  incarceration.  And it looks like each of these

14  criminal history convictions that your client is

15  complaining of through you will be covered by that

16  section of guidelines.

17        I'm asking you why are you objecting on the

18  basis of what clearly appears to be the law?

19        MR. TAYLOR:  Understood, Judge.  My

20  explanation for that would be, you know, I think

21  most importantly, Judge, underneath that list of

22  particular offenses where points are counted, only

23  under the circumstances that the Court just set out,

24  I think it's interesting to point at that list

25  because clearly the offense that my client was

1  sentenced to, the driving while license revoked, is

2  the least serious.  I don't even think I can -- need

3  to qualify that as arguably.  It's the only one

4  that's a status offense, Judge.  Simply driving

5  while licensed revoked is malum prohibits him where

6  I think as opposed to malum in se, I believe, and

7  the sentencing commission is kind of slowly figuring

8  that out in the proposed guidelines that would

9  become effective as of November 1st of this year.

10 The proposal is that -- prior to I realizing this, I

11 would have said arguably the least serious.  There

12 were a couple of other ones that were close to being

13 as innocuous, if you will, as driving while license

14 revoked, and those are supposed to be stricken from

15 that list.  Apparently to fall upon the list that

16 criminal history points are never counted.

17         So while I understand the Court's position

18 that it seems like there may not be any sound basis

19 for this objection, I believe that it's at least

20 arguable.

21         I think that the stronger issue I had and

22 the question I had on whether or not it would be

23 reasonable to bring this to the Court's attention is

24 even if my client had zero criminal history points

25 there still would be a requirement that he at least

1  by the time of sentencing provided the Government

2  with truthful and complete information regarding the

3  offense and conviction.  So I addressed that with my

4  client, and without batting an eye, Judge, he

5  explained to me that in a sense he's done that at

6  the time that he entered his plea of guilty to this.

7  The Court inquired of him what his role in this

8  procedure was, in this case was, and it's his

9  position that he provided the Court with truthful

10 and complete information at that time.  The

11 Government was present, therefore, indirectly he

12 provided the Government with that information.

13         While I understand the Court's concern that

14 at first, second, or third blush, this may not seem

15 like a well-founded objection.  I suggest to the

16 Court that perhaps arguably it is.

17         THE COURT:  I'm not aware of any proposed

18 changes in Section 4A1.2.

19         Do you have that material with you, that

20 would indicate the changes?

21         MR. TAYLOR:  I suspect I do, Judge, if I

22 would have a second.  One of things that I want to

23 make clear is -- one of the proposals is not that

24 driving while license revoked be stricken from that

25 list, but three of the other offenses that are

1  similarly innocuous to that offense are being

2  stricken.

3          THE COURT:  But not the one?

4          MR. TAYLOR:  But not the one, that is

5  correct, Your Honor.  I apologize if I wasn't clear

6  on that particular point.  I think the one that's

7  like fish and game violation, trespassing, and maybe

8  one other.

9          THE COURT:  Well, counsel, I have got to

10 tell you, I think that is a frivolous argument.  I

11 think the fact that they did not propose deleting

12 that type of conviction suggests to me that they

13 consider it to be important.  But let's go beyond

14 that because you do also make another argument which

15 I believe is substantial and that is that you feel

16 that the defendant's criminal history score, which

17 is primarily composed of these traffic violations, I

18 call them traffic, driving violations overstates his

19 criminal history.  I think that is a more

20 substantial objection.

21          Would you argue that one?

22          MR. TAYLOR:  Yes, Judge.  Thank you.

23          Essentially, Judge, I believe as added up,

24 calculated, tallied, pursuant to the rules in the

25 guidelines, I believe he has 17 criminal history

1  points that puts him in a Category VI.  And from my

2  own personal experience in this very courthouse, I

3  can provide the Court with, you know, many examples

4  of clients that have been convicted of class x

5  felonies in state court that have lower a criminal

6  history score.  And also, Judge, on this particular

7  case, as the Court already noted, there are some

8  prerequisites to criminal history points being

9  assessed for this particular offense.  And what

10  struck me as unfortunate when I reviewed the PSR is

11  that it appears that my client, frankly, and I

12  apologize for the loose language here, but never

13  caught the least bit of a break in state court on

14  these offenses.

15          On his very first one, Judge, reflected in

16  paragraph 26, he caught 90 days in the county jail

17  and 12 months conditional discharge.  He never once

18  received any sentence for driving while license

19  revoked below the threshold that would cause him to

20  accumulate points.

21          THE COURT:  Mr. Taylor, it's funny because

22  it seems like we disagree about almost everything

23  today, but to me that works the other way.  Had he

24  been treated leniently, I think that that would have

25  encouraged perhaps further violations of law.  I

1 think there is a strong argument to be made that for

2 the first time the state got it right.  They told

3 him the first time he committed the violation this

4 is serious stuff, so therefore they gave him what

5 you now see as a severe sentence rather than, quote,

6 "a lenient pat on the hand," which I think and a lot

7 of people think encourages further violations.  So

8 quite the contrary, to me the fact that the first

9 time he drove with a license revoked he got a tough

10 sentence of, I guess, of one year of conditional

11 discharge.

12          MR. TAYLOR:  And 60 days.

13          THE COURT:  And 60 days.  To me that was

14 severe for the state in these type of cases and this

15 should have said to your client this is serious

16 business and I shouldn't do it anymore.  So, I just

17 want to make that observation.  Go ahead with your

18 argument.

19          MR. TAYLOR:  I appreciate that, Your Honor,

20 and I do see the Court's point.  But I would like,

21 at least in my mind, I would like to keep this

22 separate as far as the overarching argument that

23 clearly an individual that gets caught for

24 committing the law and sentenced and turns around

25 and does it again.  I mean sure, Mr. Williams should

have known that he should not have committed this
offense.  There is no doubt about that, Judge.  I
guess my only point is that he's going to be if the
guidelines are applied as a matter of fact, as a
matter of course here, he's going to be doubly, I
believe, punished, exponentially punished.
Actually, I mean, the Court sees his history before
it and his license is not suspended or revoked as a
result of a DUI.  So begging the Court's pardon, I'm
still going to suggest to the Court that based on my
experience of 11 years going in and out of traffic
court, it's unprecedented for me to see an
individual receive 60 days in jail on an initial
offense when it's not related to a DUI.

        So overall, Judge, our position is comparing
Mr. Williams and his criminal history as it is
before the Court, with another individual who could
have easily accumulated the same number of points
based on felony convictions probably about the same
amount or close to it, Judge.  It is unfair.  There
is no -- the word escapes me right this second.  But
these individuals are not similarly situated, I
would suggest to the Court.  Clearly, he had one
major issue here and that is he never took the time,
never paid the money to get his license reinstated.

1   And he chose to disregard the law and drive.

2           And the Court should consider that to

3   whatever degree the Court believes it needs to be

4   considered.  But my only suggestion, Judge, is

5   another individual here with more serious charges

6   would have the same amount of points and would fall

7   within the same amount of the guideline range.  And

8   my suggestion, it may be a little on the optimistic

9   side, Judge, but I would ask the Court to

10  essentially find that he would fall within Criminal

11  History Category III.  The only way I can look the

12  Court in the eye and do these calculations is to

13  give them, suggest to the Court that they should get

14  the point for resisting or obstructing a police

15  officer, that he should catch a point for paragraph

16  34, which was his most recent driving on revoked

17  license.  And then, of course, he would be assessed

18  two points for committing the instant offense while

19  he was on conditional discharge.  And, of course,

20  you will be assessed one point for being less than

21  two years since being released from custody on one

22  of these driving while license revoked charges.

23          It's our only suggestion, Judge, that a

24  Criminal History Category of III more accurately

25  reflects the true seriousness of Mr. Williams's

1  Criminal History.  And that would, by my

2  calculations, Judge, that would place him in, I

3  believe, it's 108 to 135 month category which

4  coincidentally, Judge, absolutely straddles the

5  statutory minimum here.

6          THE COURT:  Thank you, Mr. Taylor.

7          MR. TAYLOR:  Thank you, Judge.

8          THE COURT:  Mr. Murphy?

9          MR. MURPHY:  Your Honor, I'm going to assume

10 that the Court doesn't want me to waste your time by

11 responding to a sperate's argument, so I won't.

12          With regard to do the overrepresentation

13 issue, however, I will simply say that the guideline

14 drafters realized that there was a number of ways to

15 show that you have a healthy disrespect for the law.

16 You can show that by accumulating several thousand

17 dollars worth of parking fines.  You could do that

18 by committing any number of felonies for which large

19 points are signed.  You could do that by committing

20 repeated misdemeanor offenses which is what we are

21 dealing with here.  Driving while license revoked is

22 not one of the least serious of the traffic offenses

23 at all.

24          In fact, it is now one of those that can be

25 elevated to a felony offense.  Perhaps that was the

1  mistake.  I agree with you.  I don't think that the

2  state court made a mistake here.  I think they gave

3  him a stiff sentence to start with and tried to tell

4  him not to do it anymore and he went right back out

5  almost year after year showing again his disregard

6  for the law.

7        This defendant has shown his healthy

8  disregard for the law by repeatedly ignoring the

9  requirements that we place down for driving here in

10 Illinois.  And that is that you have a valid

11 license.

12        Judge, the only portion -- and so therefore

13 I don't think that his argument carries much weight

14 that these are just traffic offenses.  The defendant

15 has shown through his repeated serious traffic

16 offenses that he has this healthy disrespect for the

17 law.  And I think that is totally consistent with

18 how much crack cocaine we find him with.  He has a

19 healthy disrespect for all of our laws, Your Honor.

20 So that argument, I don't think cuts much weight.

21 Let me suggest here -- and I don't think this

22 argument has really been refined for the Court, but

23 when I reviewed this Presentence Report, especially

24 page -- I will go directly to page seven, Judge.

25 That's where I find that there is at least an

1   argument to be made here, because, Judge, three of

2   these driving conditions, although they were

3   committed all on separate dates, one in June,

4   paragraph 30; one in July, paragraph 31; and one in

5   March of the following year.  Although they were

6   committed on three separate dates, it appears that

7   their disposition from the scant records -- I

8   presume the probation office was able to find -- the

9   disposition appears to have occurred all in the same

10  day and that may well give rise to an argument of

11  consolidated type sentence.

12         Now, Judge, even if you did consider these

13  to be in affect one sentence for which you could

14  assess a minimum number of points.  In other words,

15  even if you assessed two for all three of those as

16  opposed to six, the defendant still has 13 criminal

17  history points.  And 13 criminal history points

18  still puts him in a Category VI.  And those are the

19  only convictions here that I think you can even

20  arguably do that with.  All of the others occur

21  months and years apart from each other.  They are

22  totally separate offenses and this consolidation

23  argument just simply doesn't work.

24         I would submit that although counsel raises

25  the argument that it doesn't carry and shouldn't

1  carry that much weight, this defendant has shown

2  over the years his healthy disrespect for the law.

3  He's been caught primarily until we caught him with

4  this very large amount of crack cocaine, he has been

5  violating and being caught primarily by his driving

6  conduct or, should I say, misconduct.  Thank you.

7          THE COURT:  Mrs. Bailey, as the United

8  States Probation Officer, if -- how many points does

9  the typical felony conviction generate?

10         THE PROBATION OFFICER:  Typical driving

11 felony or --

12         THE COURT:  No, no, no, just a plain felony.

13 Is there three points assigned to a felony?

14         THE PROBATION OFFICER:  That's the maximum.

15 You have to be sentenced to over a year in order to

16 receive three points.

17         THE COURT:  Even if you commit a felony?

18         THE PROBATION OFFICER:  Yes, sir.

19         THE COURT:  Okay.  So if someone commits a

20 felony and he is sentenced to more than 12 months in

21 prison, he is assigned three points?

22         THE PROBATION OFFICER:  Yes, sir.

23         THE COURT:  So picking up on the argument

24 Mr. Taylor made, if we had a defendant who had

25 committed six felonies, and I think everyone would

1  say that someone who has committed six felonies has
2  a bad record, that would generate 18 points.  The
3  defendant has generated 17 points, but he doesn't
4  have a felony conviction, but he got the points.  So
5  I guess there is an argument that can be made that
6  the crime does deserve some consideration so that 17
7  points by nonfelonies is perhaps less harmful or
8  less serious than 18 points by felony convictions,
9  which is not to say that misdemeanors are not
10 serious because they are as I consider these traffic
11 violations of driving without a license or revoked
12 license are serious.  But there is some other
13 factors that one has to look at too and that was
14 hinted at by Mr. Murphy.  To accumulate 17 criminal
15 history points by committing the same misdemeanor
16 offense shows a tremendous disrespect for the law.
17 A tremendous disregard for the law.  But in this
18 defendant's case, he also has had, by my account, 14
19 arrests for which he wasn't convicted for some of
20 them, the charges are pretty serious, robbery,
21 domestic violence several times, some drug offenses.
22 This suggests to me that a defendant, in addition to
23 his conviction, has been involved in criminal
24 activity for which he was arrested but never
25 convicted.

1          Now I know sometimes a person is in the
2    wrong place at the wrong time, or he is with the
3    wrong group of people and he gets arrested.  He
4    maybe have done nothing.  But 14 times, all
5    different crimes, I suspect there is something there
6    that the defendant was doing some things for which
7    he had never been held accountable for.
8          Putting all of these things together, the
9    defendant's record suggest to me that he has shown
10   disrespect for the law and inclination to disregard
11   the law, and what a terrible example he is setting
12   for his family and friends.  And I have read the
13   letters submitted by his family on his behalf and
14   his girlfriend.  They all indicate what a nice
15   person he is.  I don't doubt that, but he also
16   breaks the law.  And I want to go back to what I
17   said the first time.  Quite often, we, in federal
18   court, castigate the state court because we say that
19   they are too lenient on people, because we look at a
20   record and we say, you know what, this is not a bad
21   man, had the state dealt with him more sensibly when
22   he was young and committed that first offense
23   instead of giving him a pat on the hand, he might
24   not have committed the second offense.  And we all
25   feel that way.  We feel that the state is too

1  lenient in how they deal with young people when they
2  first start getting involved in criminal activity.
3  We often wonder had the state been a little bit more
4  serious in their sentencing judgements maybe that
5  would have been enough to cause a young man to think
6  about what he was doing and to change his mind.
7          In this case the state did it.  As defense
8  counsel points out, in his experience he's never
9  seen a state give a person 12 months conditional
10 discharge and 60 day jail for a driving on a
11 suspended license.
12         So the state did take this case very
13 seriously for this defendant.  But instead of being
14 a wake up call, apparently had no effect and
15 Mr. Williams went ahead and violated the same law
16 seven more times.
17         Given all that, I still think that Criminal
18 History VI overstates the seriousness of his
19 criminal history.  I think he has shown disrespect
20 for the law, but so far he's not committed a felony
21 conviction, and therefore I think a Criminal History
22 Category IV would be more appropriate than a VI.
23 But I think there has to be some recognition by this
24 Court that this is a man who throughout his adult
25 life has shown disrespect for the law and people

1   know that and part of the purposes of sentencing is
2   to deter others, to say to the public that here's
3   how we feel about driving on suspended license.  If
4   you do that, this is going to happen.  So I'm sure
5   there are people who know Mr. Williams and know
6   about his record and who will say, well, you know
7   what, Mr. Williams drove without a license or with
8   his license suspended eight times, and when he went
9   to court nothing really happened.  So I don't feel
10  that I can close my eyes to that aspect for
11  Mr. Williams's conduct.  So, I will adopt the
12  Probation Officer's position that he is entitled to
13  points for all of those driving convictions in
14  paragraphs 26 and paragraphs 27 through 32.
15          And I further find though that Criminal
16  History Category is overrepresented looking at the
17  nature of the offenses he's had and that a more
18  appropriate criminal history is IV.
19          Those findings will affect the guideline
20  range.  So that the Criminal History Category set
21  out in paragraph 38 is now IV instead of VI.
22          So with that modification, the Court adopts
23  the Presentence Investigation Report.
24          And the Court finds the defendant's advisory
25  guideline range is based upon a total offense level

1  of 29 as set out in the Presentence Report Criminal

2  History Category IV, as I have just determined it,

3  reduced it from VI.  And that results in a guideline

4  advisory imprisonment range of 121 to 151 months.

5        Does the supervised release range change,

6  Mrs. Bailey?

7        THE PROBATION OFFICER:  No, sir.

8        THE COURT:  Supervised release range remains

9  at five years.  What about the fine range?

10        THE PROBATION OFFICER:  No, sir.  It stays

11  the same.

12        THE COURT:  Fine range 15,000 to 4 million.

13        And there is a special assessment of $100 as

14  provided by statute.

15        Does Government counsel have any objection

16  to the Court's finding as to the advisory guideline

17  range?

18        MR. MURPHY:  No, Your Honor.

19        THE COURT:  Based on the Court's ruling,

20  does defense counsel have any objection?

21        MR. TAYLOR:  No, Your Honor.

22        THE COURT:  Anything in aggravation by the

23  Government?

24        MR. MURPHY:  No, Your Honor.

25        THE COURT:  Anything in mitigation by

1  defense counsel?

2         MR. TAYLOR:  May I have just one second,

3  Judge.

4         THE COURT:  Okay.

5         MR. TAYLOR:  No, Your Honor.

6         THE COURT:  All right.  Before imposing

7  sentence, the law affords the defendant the right to

8  make a statement.

9         Mr. Williams, you have a right to make a

10 statement.

11        May I have a sidebar with counsel.

12        (Proceedings held at sidebar.)

13        THE COURT:  Apparently the defendant's

14 sister has called here and said that she just got in

15 from the airport.  Is she coming here to be a

16 witness for you?

17        MR. TAYLOR:  Not that I was aware of, Judge.

18 I don't think.  We had intended on only calling one

19 witness and we decided not to.

20        (Proceedings held in open court.)

21        THE COURT:  All right.  As I said,

22 Mr. Williams, you have a right to make a statement,

23 sir, and I would like to hear from you in response

24 to comments I have made and what you are facing.

25        THE DEFENDANT:  Okay.  I just feel it's not

fair for me to be getting all that time with regards

to just traffic matters.  I still was sentenced all

of my traffic matters in state court.  Now I'm in

court on the drug charge and without the traffic

matters the drug charge got me in Category I,

Category I.

            And --

            THE COURT:  I'm sorry, how does your drug

charge get you to Category I?

            THE DEFENDANT:  Just alone with my drug

charge without the traffic matters will have me in

Category I.

            THE COURT:  But that's not the law.  Your

criminal history is based on your prior criminal

convictions.  You don't know that?

            THE DEFENDANT:  Right, about traffic, right.

            THE COURT:  All convictions.  And that

includes felony convictions, misdemeanor

convictions.  And your misdemeanor convictions

happen to be driving violations.

            THE DEFENDANT:  Right.

            THE COURT:  So in terms of your criminal

history, it depends upon your prior convictions and

a number of points assigned to them.  So you were

properly assigned under the law points for your

1  driving record.

2          THE DEFENDANT:  Okay.  I understand that.

3  Okay.  When I first -- when I first got arrested, it

4  was brought to my attention when my lawyer came out

5  to visit me that I was eligible for the safety

6  valve.  Then after -- down the road once by the time

7  I got my PSR, he said that I was not eligible for

8  the safety valve.  Now my traffic offenses take me

9  from one side of the chart all the way to the other

10 side of the chart where is -- that the criminal

11 history points -- if you assign me three points and

12 the one for the obstruction of justice, that's four

13 points, isn't that the Category III, four points?

14         THE COURT:  Category III would be anywhere

15 from four to six points, anywhere within that range

16 you have Category III.

17         MR. TAYLOR:  Judge, can I have just a

18 second?

19         THE COURT:  Yes.

20         MR. TAYLOR:  Thank you, Judge.  Your Honor,

21 I'm hopeful that Mr. Williams can continue to speak

22 to the Court today.  This is something that I've

23 talked to him about time and time again and his

24 mother has also.  He is not real comfortable doing

25 that.  He had prepared a letter for the Court.  He

1  had suggested to me that he wanted to stand on his

2  letter, but I think that the Court would rather hear

3  from him.  I would like for him to speak to you, if

4  he will.

5          THE COURT:  Well two things, before I do

6  that, Mr. Taylor, I'm not so sure I heard your

7  recommendation as to what you think the sentence

8  should be, why don't you give me your argument on

9  that score then I will address Mr. Williams's

10 concern.

11         MR. TAYLOR:  Yes, Your Honor.  From here

12 okay, Your Honor?

13         THE COURT:  That will be okay.

14         MR. TAYLOR:  Judge, not to rehash anything

15 that we've gone through already today.  I would just

16 suggest to the Court that -- the Court's read the

17 letters.  I think once again, there are different

18 ways to interpret those letters and it would be

19 absolutely appropriate, I suspect, for the Court to

20 have the mind set that this man was essentially

21 almost a role model to many children and tried to

22 monitor them and send them down the right -- the

23 narrow path, and now he's gone and committed this

24 offense.

25         At 38 years of age, Judge, I think that's

1  what the Court -- keeping in mind, that he went

2  through 38 years of his life without being charged,

3  being convicted of a felony.  But the Court could

4  say, hey, let's continue using, you know,

5  Mr. Williams as something for these children to look

6  at and now he can be punished harshly so they see

7  the ramifications and the repercussions of dealing

8  in drugs.  That would be one way to look at this and

9  I suspect that there is not anything wrong with

10  looking at that that way.

11        On the other hand, Judge, of course the

12  Court has read the letters and the Court believes

13  the genuineness and sincerity of these letters.  And

14  if the Court keeps in mind that my client plead

15  guilty at his absolute first opportunity, but for

16  his objection and inability to understand the points

17  as they relate to traffic.  And Judge if I could

18  just take half a second here to kind of on his

19  defense -- actually on his defense, Judge, the Court

20  should realize that during his detention he has seen

21  many PSRs.  There is plenty of federal felony

22  defendants in there.  And on many of those PSRs,

23  there's driving while license suspended, driving

24  while license revoked, zero point, zero point, zero

25  point because they were for less than a year of

conditional discharge and probation of less than 30

days, which is typically what we see.

So the man has been incarcerated and he has

been reading these and this issue he just cannot get

over it, Judge.  So I just want to kind of let the

Court know, I have talked to him and from his heart

this is not the issue that he wish to bring in front

of the Court today.  He wants to let the Court know

just what I'm saying, Judge, that a sentence at the

minimum of the guideline range as the Court's

determined it, 121 months is essentially at the

statutory minimum, and it's my suggestion and

request to the Court that that is appropriate.  And

if he is sentenced to that, we know that he is going

to do 85 percent of that time, Judge.  And he is

still going to be able to come out and he can go

back and be an example in the community of someone

who has made the mistake, served significant periods

of time in federal incarceration and come out and

continued to be the nice person that everyone agrees

that he is, but then go forward and be productive

and be an example in that way, Judge.

And it's for these reasons, Your Honor, that

we are asking the Court to essentially sentence him

to the minimum whether it be the statutory minimum

1  or the extreme low end of the guideline range as the

2  Court has repeated.

3          Thank you, Judge.

4          THE COURT:  Thank you, Mr. Taylor.

5          Now, let's get the back to you,

6  Mr. Williams.

7          THE DEFENDANT:  Okay, sir, it's not that I

8  want to argue with you about your point about the

9  traffic, it's just not that they not serious.  It's

10  just I just kind of feel like they not no felony

11  convictions and just -- I apologizing to the Court

12  for that and just would like to just ask you, could

13  you just please consider it that it ain't no felony

14  conviction.

15          And also would like to state also as far as

16  you reading my background, I never robbed no one,

17  you know what I'm saying, that was something, you

18  know what I'm saying, that was something with a

19  dispute as far as domestic, you know what I'm

20  saying, and it was not nothing.  I never robbed no

21  one in my life, you know.  I just would like you to

22  just take that in consideration of that.  I don't

23  have no felony convictions and I just not use the

24  traffic against me and just sentence me to less

25  sentence as possible.

1        THE COURT:  I feel that you are sincere in

2  what you just told me.  I am still concerned that

3  you don't see driving while a license is suspended

4  or driving on a revoked license as being a serious

5  offense.

6        Why is it you don't think those are serious

7  offenses?

8        THE DEFENDANT:  No, not that I don't feel

9  that they are not serious offenses, because I do

10  feel, I do feel they are serious offenses.  How much

11  I really do wish I had my driver's license,

12  whatever, as far as to not keep going those type of

13  sentences, because I really hate to be limited to my

14  driving privileges anyway, you know, but I do think

15  those driving privileges serious because doing the

16  60 days.  Sixty days is the longest I've ever did in

17  jail and that hurt me.  So it's not like I don't

18  take the driving serious.  It's just that I've seen

19  all types of other convictions and stuff.

20        As far as people got other drug cases, gun

21  cases, robberies, murders, all that, and this is

22  just driving.  It's something way less than

23  anything, just in my view, to see that for me to be,

24  you know what I'm saying, punished or greater limit

25  about, you know, driving, not that driving not

```
 1  serious, but just looking at the terms under other
 2  conditions, that's all.
 3        THE COURT:  I think that's a reasonable
 4  position.  There are a lot of people out there who
 5  have asked why is it that under federal sentencing
 6  policy someone who sells crack will get more time
 7  than someone who shoots somebody or robs somebody in
 8  state court.  And this is frequently asked because
 9  people who sell crack face mandatory minimums.  In
10  your case you face up to ten years.  And it's not
11  uncommon for defendants and their lawyers to argue,
12  Judge, there are people in jail now in state court
13  who are facing murder charges and they are going to
14  get less time than what you are going to give my
15  client for selling crack cocaine, that doesn't seem
16  fair, because, quote, I'm not -- "he's not hurting
17  anybody by selling crack, he isn't shooting them or
18  striking them," except the law says that you are
19  hurting people, that selling crack and other drugs
20  destroys people lives as well as yours and there is
21  some concern that perhaps the sentencing for selling
22  crack is more severe than it should be and there is
23  a debate going on now in Congress to perhaps lessen
24  the penalty for crack cocaine as compared to powder
25  cocaine or some other drugs.
```

And certainly as a judge I'm aware of those situations where persons selling drugs face stiffer penalties than people who may rob and get sentenced in state court.  I'm aware of that and I can understand the view you have expressed.  It doesn't seem right.  All I can say is that's the law.  And if you know the law, you should comply with it because you don't have to sell crack cocaine just like you don't have to rob.

Now I think you have been sincere with me in that I don't think you really feel that your driving offenses are really so serious that you should spend a lot of time in jail for them.  In essence, you didn't, but they are being counted against you now. Your counsel said something that you have to keep in mind even if I say that your criminal history should be reduced to III rather than IV, and if I reduce it to III you will be facing 108 months to 135 months, but by statutory you face a mandatory minimum of ten years because of the drugs just of themselves, no matter what I say about your past history, you got to spend ten years.

Do you understand that?

Well, I think ten years is enough time for you and I think that I will sentence you to the

mandatory minimum of ten years.  And therefore I
will withdraw my finding that Criminal History IV is
more appropriate and I will reduce it to Criminal
History III, so that your advisory guideline range
is 108 to 135 months, and then because of the
mandatory minimum for your drug dealing that will
trump the advisory guideline range.  So that I will
have to sentence you to the 120 mandatory minimum,
and that's what I'm going to do.

        But by explaining to you what I'm doing and
why I'm doing it, I hope you understand and the word
gets out to people who know about your situation
that driving offenses, where you get sentenced to
more than a year of -- year or more of probation or
the jail for more than 30 days is a serious offense
under the Federal Sentencing Guidelines and they
will count against you when you go up for
sentencing.  So because that's not unique with you,
it's not infrequent, frequently happens that persons
have a lot of driving offenses and the same argument
is made that you're making here now.  These aren't
felonies.  I'm not robbing anybody.  I'm not
shooting anybody.  I just didn't take the time to
get my driver's license.  There is nothing wrong
with that, Judge.  But there is.  And there is a

1  tendency that a -- not a tendency but it is the --

2  in federal court we have very little discretion to

3  applying the law.  And when we do apply it, we try

4  to apply it consistently and uniformly, so that I

5  can't shut my eyes to what the law requires.  Why do

6  I have discretion to do so.  Now, because I

7  appreciate your sincerity with me, and I don't think

8  you're a bad person, we disagree about respect for

9  the law, but you're not a bad person, the letters I

10  received says that your criminal history says that

11  because other than driving offenses you are not a

12  bad fella, but --

13          THE DEFENDANT:  I'm not saying no ways that

14  we disagree about the law.  I don't feel like that

15  we disagree about the law because as far as my

16  driving, I still have to be punished for my driving

17  which I was punished for my driving.

18          THE COURT:  Right.

19          THE DEFENDANT:  I served time, any time I

20  got up under the wheel and drove.  It's not that we

21  disagree about the law.  It's just that I was just

22  asking you, would appreciate it if I asked that you

23  just consider just in giving me just the lesser time

24  as possible, it's not that we disagree with the law

25  because I have no say, you know what I'm saying,

```
 1  because as far as the law matter going, it's not
 2  nothing wrong with that.  As far as the traffic, you
 3  know what I am saying, you know, because any time I
 4  drove I knew my consequences of my driving and
 5  that's when I be sitting in jail doing days and I
 6  done that each time, and that 60 days when I done
 7  that 60 days for my driving, 60 days was the longest
 8  that I ever did.  And that 60 days kinda killed me.
 9  I just come today just to sit in front of you to
10  just ask will you just take it in consideration to
11  just give me the lesser sentence as possible.
12          THE COURT:  Well, you have been successful
13  because the lesser sentence I can give you is the
14  mandatory minimum which I have done by changing my
15  mind about your Criminal History Category from
16  reducing it from IV to III.  So and I am prepared --
17  I am prepared to stand-by that.
18          So pursuant to the Sentencing Reform Act of
19  1984 and in consideration of the purposes of
20  sentencing as set out in Section 3553(a) of Title
21  18, and in consideration of the mandatory minimum
22  required by law in this case, the defendant Willie
23  James Williams, Jr., is hereby committed to the
24  custody of the Bureau of Prisons for a period of 120
25  months.
```

1        The Court will not impose a fine.  I find

2   that the defendant is not able now and in the near

3   future to pay a fine and any income he earns while

4   incarcerated should go toward the support of his

5   children.

6        Following release from custody, the

7   defendant must serve a five year term of supervised

8   release.  Within 72 hours of his release, he must

9   report in person to the Probation Office in the

10  district to which he is released.  While on

11  supervised release, the defendant cannot commit

12  another federal, state, or local crime nor possess a

13  controlled substance.  The defendant must submit to

14  one drug test within 15 days of release from

15  imprisonment, and two drug tests thereafter as

16  directed by the Probation Officer.

17       Pursuant to the Justice for All Act of 2004,

18  the defendant must cooperate in the collection of

19  DNA directed by the Probation Officer or the Bureau

20  of Prisons.

21       The defendant must comply with the standard

22  conditions of supervised release recommended by the

23  United States Sentencing Commission.  However, the

24  Court would impose the following special conditions:

25       One, the defendant must obtain a GED within

1 the first 12 months of supervised release if he has

2 not already obtained one while incarcerated.

3        Two, he must participate in a program of job

4 training or employment counseling as directed by the

5 Probation Officer.

6        And if the defendant is unemployed after the

7 first 60 months of supervised release, he must do at

8 least 20 hours of volunteer community service work

9 until he is employed.  The same goes if he is

10 discharged -- not discharged -- off work for 60

11 days.

12        He cannot own, purchase, or possess a

13 firearm, ammunition or other dangerous weapon.

14        And by law, a special assessment of $100 is

15 imposed payable immediately.

16        The Court would recommend to the Bureau of

17 Prisons that the defendant serve his sentence in a

18 minimum security facility as close to his family in

19 Peoria, Illinois as possible.  And one that will

20 allow him to maximize his exposure to educational

21 and vocational opportunities.

22        By the way, Mr. Williams, do you have any

23 job skills?

24            THE DEFENDANT:  Yes.

25            THE COURT:  What?

```
1              THE DEFENDANT:  Mechanic.

2              THE COURT:  Mechanical?

3              THE DEFENDANT:  Uh-huh.

4              THE COURT:  I was just talking to the warden

5   at the Pekin prison yesterday, he said that they

6   have a whole array of vocational programs: welding,

7   electricity, carpentry, and plumbing.  All of those

8   types of programs because one problem people have

9   when they get released from prison is finding a good

10  job.  And I've learned that trades like welding,

11  plumbing, electricity, they are using skilled

12  people, even those who have criminal records.  So I

13  will encourage you to take advantage of all of these

14  programs in a facility where you are housed.  And I

15  have enjoyed chatting with you and you have

16  influenced my decision here today, and I feel that I

17  have done the right thing by reducing your sentence

18  to the mandatory minimum.  So I wish you luck.

19              I will advise you of your right to appeal

20  this sentence.  By filing a notice of appeal within

21  ten days of today's date, your attorney can prepare

22  a notice of appeal for you.  If for some reason he

23  is unwilling or unable to do that, you want to

24  appeal this sentence.  All you have to do is contact

25  the Clerk of this Court and indicate you want to
```

1  appeal and the Clerk will prepare and file a notice

2  of appeal for you.  If you cannot pay the cost of an

3  appeal you can ask for leave to appeal without

4  payment of cost.  And if I find that you are

5  eligible, I can waive cost.

6          You understand your appeal rights?

7          THE DEFENDANT:  Yes.

8          THE COURT:  The defendant is remanded to the

9  custody of the marshal to await execution of

10  sentence.

11          Yes, Mr. Taylor.

12          MR. TAYLOR:  Judge, I apologize.  Moments

13  ago my client conveyed to me that he wished for me

14  to inquire of the Court whether or not he would

15  consider as a part of the sentence here that he be

16  evaluated for the drug program once he gets to the

17  Bureau of Prisons.

18          THE COURT:  Very much so.  The Court would

19  modify his recommendation to the Bureau of Prisons,

20  indicate that the priority is to sentence the

21  defendant to a minimum security facility that will

22  allow him to participate in the Comprehensive Drug

23  Treatment Program or comparable program and all the

24  of the other terms remain in effect.

25          The hearing is adjourned.

```
1          (Which were all of the proceedings had in

2            this case on this date.)

3                        * * * * *

4


5      I certify that the foregoing is a correct

6  transcript from the record of proceedings in the

7  above-entitled matter.

8


9


10  s/Nancy Mersot                Date:

11  Court Reporter

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```